Goodwin et al. vs. Robinson.

---

Goodwin et al. vs. Robinson.

1. RECOUPMENT:
   A vendee who purchased land on the false and fraudulent representations of his vendor, as to its quality, is entitled to recoup his damages in an action for the purchase money;  he need not show, in his answer, when he discovered the fraud, or an offer to rescind the contract.

2. PRACTICE: *Striking amended answer.*
   After demurrer sustained to an answer, it is in the discretion of the court to strike an amended answer, raising the same issues, from the files.

3. FRAUD: *False representations. When scienter need not be shown.*
   If one in the possession of land. professing to be familiar with its quality, by false representations in respect thereof induce another to contract in reference to it, he is liable for the deceit, whether he knew the representation to be false or not.

4. PRACTICE:
   The sufficiency of an answer should be raised by demurrer, and not by a motion to strike.

APPEAL from *Calhoun* Circuit Court.

Hon. J. T. ELLIOTT, Circuit Judge.

*Met. L. Jones* for appellant.

The last answer was arbitrarily stricken out. No cause appears. Newman's Pl. and Pr., 469, 474; *Blackmore* v. *President, etc.,* 4 Ark., 454; *Pennington* v. *Gibson,* 6 Ark., 447; *Crary* v. *Ashley,* ib., 203; 1 Chitty Plead., 486, 508.

The first answer contained a good defense. *Wheat* v. *Dolson,* 12 Ark., 699; *Walker* v. *Johnson,* 13 Ark., 526; *McDaniel* v. *Grace,* 15 Ark., 477; *Barnes* v. *Anderson,* 21 Ark., 126; *Dickson* v. *Richardson,* 16 Ark., 119; *Cockrill* v. *Warner,* 14 Ark., 356; *Desha* v. *Robinson,* 17 Ark., 228; *Rotan* v. *Nichols,* 22 Ark., 248; *Miller* v. *Wood,* 23 Ark., 546.

L. A. PINDALL, SP. J.:

This was a complaint at law upon a note under seal, executed by the appellants to the appellee, dated 8th October, 1866, and due 1st March, 1869, for $1,600 and interest after maturity, as expressed in the note, "in part payment for his plantation in Calhoun county."

The questions for determination arise upon the defenses the appellants attempted to interpose to the suit.

An answer was filed at the October term, 1874, in which it was alleged, in substance, that the writing obligatory, upon which the suit was based, and two other writings obligatory, amounting

in all to $4,400, were executed by the defendants to the plaintiff in consideration of the purchase of a plantation in Calhoun county, which is particularly described by numbers in said answer, and for no other consideration.

That to induce defendants to purchase said plantation and to execute said writings obligatory, the plaintiff falsely and fraudulently represented to the defendants, that all the cleared land he then occupied was on said plantation, and that there were 400 acres of said land cleared, and in a high state of cultivation, and that said plantation was in good repair and condition.

That said defendants had never seen said plantation and knew nothing about it, except as informed by said plaintiff, and that they purchased the same and executed the writings obligatory therefor, relying wholly upon the truth of said representations. That said representations were false ; that 150 acres of the cleared land occupied by plaintiff, at the time of said representations, and purchase, were not on the lands embraced in said plantation, but were upon the public lands of the United States and not embraced in said sale and purchase, and that there were not 400 acres of cleared land on said plantation, but only 240 acres of said lands were cleared or improved lands; that said plantation was not in good repair or condition, but that the houses, gin-buildings, lots, fields, gates and fences were dilapidated and decayed, and that said plantation was not in a high state of cultivation. That the defendants did not know that said representations were false, but believed them to be true and were deceived thereby.

That they had paid off the other two writings obligatory. That the difference between the true value of said plantation, and the value it would have had if said representations had been true was $1,600 the principal of the note. Wherefore they plead a total failure of consideration for the writing obligatory sued upon.

The plaintiff interposed a demurrer to the answer, which was sustained by the court, and the first question here arises upon the exceptions taken by appellants, to the ruling of the court on this demurrer. This answer in effect sets up a claim for damages sustained by appellants by reason of the deceitful and fraudulent representations of the appellee, in and about the contract out of which the appellee's claim arises. It is in reality an independent cause of action by the defendants against the plaintiffs, but in as much as it is between the same parties, and grows out of the same transaction in which plaintiffs' claim originated, to avoid a circuity of action, and a multiplicity of suits, the tendency of modern decisions is to permit this cause of action to be recouped against the sum claimed by the plaintiff in the original suit.

A partial failure of consideration as to real estate is the subject of recoupment, when the partial failure is in the quantity or quality of the subject, otherwise where there is a partial failure in the title.

This was ruled by this court in *Wheat* v. *Dodson*, 12 Ark., 699, after a very elaborate examination of the authorities, and the reasoning upon which they rest, and has been followed by this court in a number of cases since. See *Walker* v. *Johnson*, 13 Ark., 526; *McDaniel* v. *Grace*, 15 Ark., 477; *Barnes* v. *Anderson*, 21 Ark., 126; *Dickson* v. *Richardson*, 16 Ark., 119; and *Cockrill* v. *Warner*, 14 Ark., 356.

In *Desha* v. *Robinson*, 17 Ark., 246, it is laid down as well sustained: "That in all that class of cases, commonly called failure of consideration, whether involving bad faith or not, or where fraud has intervened, or there has been a breach of warranty, fraudulent or not, or of any other stipulation of the contract sued upon, entitling the defendant to a cross action against the plaintiff, to recover damages for such failure, fraud or breach, he may, if he elect to do so, instead of resorting to such cross

action, plead the matter by special sworn plea under the provisions of our statute, or, if upon a verbal contract, plead the general issue, and give notice of the matter relied upon and claim a reduction of the amount the plaintiff would otherwise recover, corresponding with the injury he had sustained." The defendants, therefore, could recoup the damages they claimed from the plaintiff by reason of the fraudulent representations in the sale of the plantation concerning the quality or quantity of the land, in this suit for the purchase money.

Was the answer sufficient in this case? The demurrer questions it upon five grounds:

*First*—That said plea fails to show that defendants purchased the premises therein stated solely upon the representations of plaintiff.

This was not true in point of fact for the answer expressly states that defendants had never seen said plantation, and knew nothing about the same, except as informed by said plaintiff, and relied wholly upon the statements and representations of said plaintiff and were deceived thereby, and were thereby induced to purchase from said plaintiff, and did purchase, etc., etc. We think the answer is sufficiently full.

It is said in the text, 3 Parsons on Contracts, 775, that "it must appear that the injured party, not only did in fact rely upon the fraudulent statement, but that he had a right to rely upon it in full belief of its truth, for otherwise it was his own fault or folly, and he cannot ask the law to relieve him from the consequences. If, however, he mainly and substantially relied upon the fraudulent representations he will have his action for the damage he sustained, although he was in fact influenced by other causes," and in a note it is said, "It is not necessary that the vendor should rely solely on the fraudulent statements of the defendant as to the solvency of a third party, in order to give a right of

action.    It is sufficient if the goods were parted with upon such
representations, and would not have been but for them," citing
*Addington* v. *Allen*, 11 Wend., 374, and *Young* v. *Hall*, 4 Ga.,
95; and both the citations sustain the principles of the note.

· We do not think it comes with a very good grace from a party
who has deceived and defrauded another *by false representations*,
to shield himself from responsibility by claiming that other influ-
ences may have aided him in the deceit, *contributed to his assist-
ance, any more than it would to chide his dupe for his credulity.*

For the second ground of demurrer it is alleged that the
defendants fail to show, in their answer or plea, when they dis-
covered the fraud and false representations of which they com-
plain, nor do they propose to rescind the contract, or aver that
they have been ousted by title paramount.

A party, who has been induced to enter into a contract for the
purchase of property by the false representations of the vendor,
concerning the quantity or quality of the article sold, may have
either of these remedies which he conceives it is most to his
interest to adopt.

He may annull the contract, and by returning or offering to
return the property purchased, within a reasonable time, entitle
himself to recover whatever he had paid upon the contract, or he
may elect to retain the property, and sue for the damages he has
sustained by reason of the false and fraudulent representations,
and in this event the measure of the damages would be the dif-
ference between the real value of the property in its true condi-
tion, and the price at which he purchased it, or, to avoid a
circuity of action, and a multiplicity of suits, he may plead such
damages in an action for the purchase money, and is entitled to
have the same recouped from the price he agreed to pay.    2
Kent Com., 8 ed., pp. 605 and 610; Sugden Vendors, 381, star
paging; Sedgwick on Damages, pp. 445–6; *Desha* v. *Robinson,
supra.*

In this answer the defendants are not seeking a rescission of the contract, but merely a recoupment of the damages they allege they have sustained by the inferior quality of the property, which they were induced to purchase by the fraudulent repie-sentations of the plaintiff. When they discovered the fraud is therefore not material, nor is an offer to return the property neces-sary.

As to the third ground of demurrer it is alleged that defendants failed to make profert of the conveyance to them by plaintiff.

The answer does not show that a conveyance was executed, nor was one necessary to their rights in this action. It does show that there was a purchase of land, and the execution of these notes under seal, and that said purchase and the execution of these notes were procured and induced by certain representations concerning the quality of the land; that these representations were false, and that defendants were damaged thereby, all of which is sufficiently alleged, and defendants' right of action grows out of the fraud.

If the fraud concerned the title to the land, the conveyance which evidenced the title, and the covenants which secured it, would be material, as was held in *McDermott* v. *Cable*, 23 Ark., 200; but as the fraud concerns the quality of the land, which would not appear in the deed, or be secured by the covenant, the cause of action is not founded on any conveyance.

Our Code requires that where the cause of action is founded on any note, bond, or other writing, or where either party shall rely on any deed, or other writing, such writing shall be filed with the pleading. Gantt's Digest, 4599 and 4600. But we have shown that such is not the case in this answer, and if this were not true, such objectinn is not cause for demurrer under the pres-ent system. *Nordman* v. *Craighead*, 27 Ark., 373; Newman's Prac. and Plead., 251–52.

For the fourth ground of demurrer, it is alleged that defendant's answer makes no such case as amounts to a defense to the action; and as to the fifth ground, that defendants cannot defend without offering to place plaintiff in the same condition that they found him when they made the purchase or discovered the alleged fraud.

These two assignments are sufficiently adverted to in our remarks upon the first and second grounds above.

Our conclusion upon this demurrer is, that the answer, if true, is a good defense to the suit, so far as the damages defendants sustained by reason of the facts averred therein, and that the court erred in sustaining the demurrer.

After the demurrer was sustained in the court below, the defendants, upon leave obtained from the court, filed an amended answer, which the record shows was stricken out by order of the court for good cause shown. And as the case must be remanded for the errror above mentioned, it may be useful to advert to these exceptions taken by appellants to the ruling of the court in striking out said amended answer.

This amended answer was in three paragraphs. In the first paragraph the defendants set up the same matter that was pleaded in their original answer, with a single additional averment, "That the said plaintiff knew at the time he made the said representations that they were false."

By the second paragraph, defendants set up that, at the time of said contract, as an inducement to said purchase, plaintiffs falsely and fraudulently represented to defendants that said plantation contained 1153½ acres; that defendants had never seen the same, and wholly relied upon the representations, and being deceived thereby, purchased said plantation and executed the writing obligatory sued upon; that said plantation did not contain 1153½ but only 1103½ acres, and that, by reason of said false representations, the defendants have a counter claim against plaintiff

for the value of said fifty acres less than as stated by plaintiff, to-wit, for $170.

By the third paragraph of this amended answer, defendants set up the same matters as was plead in the original answer, with two additional averments; "That the 158 acres of cleared land, which was on the public lands of the United States, and not on the lands conveyed, had long since been given up and yielded by defendants, and that immediately after said defendants ascertained that said represenations were false, and before the note herein was sued upon, the defendants filed their bill on the equity side of said Circuit Court of Calhoun county, setting up all the facts, and offering to rescind the contract and showing that they were able and willing to place plaintiff in *statu quo*, and that said suit was still pending."

This answer was duly sworn to and filed by leave of the court first asked and obtained, and in the same record entry noting the leave given and the filing, proceeds to show " That, on motion of plaintiff, and for good cause shown, it is ordered that the amended answer, just filed, be stricken out."

Defendants excepted to the ruling of the court striking out this amended answer, and final judgment *nil decit* was taken. Defendants again excepted, and appealed to this court.

If this motion and the good cause shown, were in writing, they are omitted from the transcript, and we are not advised of the reason which actuated the court in striking out the pleading. We will, therefore, look to the legal effect of the second paragraph, and the attitude of the case as it then stood.

In regard to the first paragraph, if the legal effect of the original answer was changed by inserting the averment concerning plaintiff's knowledge of the falsity of his statements, we conceive the defendants would have the legal right to refile their pleading thus amended, and to have the same considered by the

court, but if this averment did not materially change the legal effect of the pleading, it would be no abuse of the discretion of the court to refuse to permit defendants to cumber the records, and take up the time of the court by pleading the same matter again and again, after it has once been duly considered. The question, then, is whether it was necessary for defendants expressly to aver that plaintiffs knew these representations were false at the time he made them, in order to charge him with the damages they had sustained by reason of the deceit practiced upon them.

It is averred in the original answer that the defendants were in ignorance of the facts represented by plaintiff, and that they relied wholly upon these representations; that plaintiff falsely and fraudulently made these representations in a treaty for the sale of the land; that they were made to induce defendants to purchase the land and execute the writing obligatory sued upon; that they were false, and that defendants were deceived and damaged thereby.

It is apparent that these representations were made in relation to his own property, occupied by him, of which he assumed to speak, and with which he is presumed to be familiar, in a treaty from which he was to derive advantages. We think from the allegations in the original answer, upon moral considerations as well as upon well settled principles of the law, appellee was responsible for the damages alleged to have been sustained by the appellants, whether he knew the representations to be false or not. 3 Parsons on Contracts, 784–5; 1 Story on Contracts, sec. 506. And that therefore the first paragraph of the amended answer presented no other or stronger defense than the original answer, upon which appellants had already obtained the judgment of the court, and that the court might have stricken out the first paragraph, without any abuse of its discretion. Newman's Prac. and Plead., 468–9.

The allegations in the second paragraph, however, presented a defense not made in the original answer—a claim to recoup $170 for an alleged deficiency in *quantity*, and, in accordance with the principles hereinbefore announced, was a good defense to so much of appellee's claim.

On this subject, the general rule, as given in 1 Sugden on Vendors, star page 370, is: "That when a misrepresentation is made as to quantity, though innocently, the right of the purchaser is to have what the vendor can give with an abatement out of the purchase money, for as much as the quantity falls short of the representation." See also, *Harrell* v. *Hill*, 19 Ark., 102.

As the paragraph contained a good defense, *pro tanto*, and as it was properly filed by leave of the court, the plaintiff was entitled to the benefit of it, and it was erroneous to strike it out.

By the third paragraph, appellants attempted to show that defendants had rescinded the contract, but the allegations were not full enough.

It is not claimed that this court of law could rescind the contract, or that the contract had been rescinded, in the equity cause, but the paragraph is upon the supposition that the contract was void from its inception, by reason of the fraud practiced upon the defendants by the plaintiffs, in the treaty in which the contract originated; and the reference to the chancery suit was to show he had elected to cancel the contract, and ought not, in this suit, to be held liable for the purchase money.

As we have before seen, the defendants had their election, either to rescind the contract, or to affirm it and seek relief in a suit for damages. If they elected to disaffirm the contract they must do so within a reasonable time, after they discovered the fraud, must return or offer to return the property, and abandon and give up all they received by the contract, and they must hold themselves in that attitude. *Davis* v. *Tarwater*, 15 Ark., 295;

*Vol. xxx.—35.*

*Seabourn* v. *Sutherland*, 17 Ark., 606 ; *Yeates* v. *Pryor*, 11 Ark., 75 ; 3 Parsons on Contracts, 780–782.

The allegation here is, that they had yielded up the one hundred and fifty-eight acres, which was not embraced in the contract at all, and in which, under the contract, they had nothing to yield. There is no allegation that they gave up any of the lands embraced in the contract. The allegation that they had filed their bill in chancery, stating all the facts, and showing their ability and willingness to place plaintiff in *statu quo*, amounts to nothing. It is sufficient to say they do not state the facts here, or show ability or willingness to cancel, in this paragraph, or in this suit. On the contrary, the whole framework of their defense shows that they have elected to pursue their other remedy, mentioned above, that is, to affirm the contract, keep the property, and to claim the damages sustained by them. They show they have paid the first two notes, and claim to have their damages recouped against the one now in suit.

But inasmuch as one of the paragraphs in the answer was a good defense, the court erred in sustaining a motion to strike the whole answer out. Newman's Prac. and Plead., 660 ; *Buller* v. *Wood*, 10 How. Prac. Rts., 222.

We may further remark that this court has more than once expressed its disapprobation of the practice of striking out answers or pleas, unless the court clearly perceives that they are wholly frivolous. *Blackmore* v. *President and Directors, etc.*, 4 Ark., 455 ; *Crary* v. *Ashley*, ib., 207 ; *Pennington* v. *Gibson*, 6 Ark., 451.

We think a motion to strike out the first paragraph of the amended answer might not have been improper, inasmuch as it presented the same defense which had just been considered ; but that the objections to the second and third paragraphs should have been made by demurrer to said paragraphs separately.

We have seen that the second paragraph was good, and while the third paragraph was defective and insufficient, it was not frivolous. It was signed by counsel, duly verified, and filed by leave of the court, and should not have been stricken out on motion.

"If the whole pleadings be defective, and show no cause of action or defense, the defects cannot be reached by motion, but by a general demurrer only." Newman's Prac. and Plead., 470; *Benedict* v. *Drake*, 6 How. Prac. Rts., 352.

The judgment of the Circuit Court is reversed, and the cause remanded, with instructions to that court to overrule the demurrer to the original answer, and to permit defendant to reinstate the second paragraph of the amended answer, and to proceed with the cause, not inconsistent with this opinion.

Mr. Justice HARRISON did not sit in this case.