68  299
75  585

## BINGHAMPTON TRUST COMPANY *v.* AUTEN.

### Opinion delivered June 16, 1900.

1. DECEIT—RESCISSION.—Where a trust company was induced to buy worth-less notes by fraudulent representations of the seller as to the maker's solvency, it may sue for damages occasioned by the deceit without offer-ing to return the notes. (Page 304.)

2. PRINCIPAL AND AGENT—LIABILITY OF BANK FOR PRESIDENT'S FRAUD.—Where the president of a bank committed a fraud in the course of his employment, the bank will be liable therefor, though the directors of the bank did not know of nor authorize the fraud. (Page 305.)

3. USURY—CORPORATIONS.—There can be no usury in a contract between corporations entered into with reference to the laws either of New York or of Arkansas, where corporations are forbidden by the laws of the former state to interpose the defense of usury, and by the laws of the latter state the interest charged was not excessive. (Page 306.)

Appeal from Pulaski Circuit Court, Second Division.

JOS. W. MARTIN, Judge.

### STATEMENT BY THE COURT.

The McCarthy-Joyce Company, an Arkansas corporation, was on 7th of December, 1892, indebted to the First National Bank of Little Rock in the sum of thirty thousand dollars; its account with the bank being overdrawn to that amount. For the purpose of raising money to pay off a portion of this debt, the company on that day executed to James Joyce two notes for five thousand dollars each, one due in four and the other in five months. We copy one of them: "Little Rock, Ark., De-cember 7, 1892. $5,000. Four months after date we or either of us promise to pay to the order of James Joyce $5,000, for value received, negotiable and payable without defalcation or discount at the First National Bank of Little Rock, Ark., with interest from maturity at the rate of 10 per cent. per an-num until paid. McCarthy-Joyce Company, Geo. Mandlebaum, Secretary and Treasurer."

The notes were indorsed by James Joyce, the payee, in

blank, and were delivered by the company to H. G. Allis, president of the bank, to be negotiated by him, the proceeds thereof to be applied on the debt of the company to the bank.    Allis indorsed the notes, and then transmitted them to the Binghampton Trust Company, of Binghampton, N. Y., in the following letter:

"Capital and surplus, $600,000.    H. G. Allis, President. W. C. Denny, Cashier.    First National Bank of Little Rock, Ark.    December 10, 1892.    Binghampton Trust Company: Gentlemen—I enclose you two notes of the McCarthy-Joyce Company, one at four months, the other at five months, from the 7th inst., for $5,000 each.    This company now has on hand 1,500 bales of cotton, worth in the neighborhood of $70,000.    It is probable they will have to hold this cotton for sixty or ninety days.    I indorse the paper myself, in order that it may be subjected to any collateral of mine in your hands.    The paper is absolutely good, as we hold insurance and warehouse receipts on all this cotton.    If you can handle it, kindly remit the amount of the notes to the United States National Bank of New York for our credit, and advise me proceeds by wire; otherwise, return.    Yours very truly,

"H. G. Allis, President."

The statements in the letter were false.    The McCarthy-Joyce Company was insolvent.    It did not have on hand the cotton mentioned, nor did Allis or the bank have warehouse receipts for the cotton.    The trust company, being misled by these false statements, accepted the note, and remitted in payment for the same $9,710 to the United States Bank of New York, which was placed to the credit of the First National Bank, and by that bank credited on the account of the McCarthy-Joyce Company.    One of the notes was taken by the trust company for itself, and the other for the Deposit Bank of New York.

The trust company afterwards brought this action against the First National Bank to recover damages for deceit on account of the false statements of its president, Allis.    The circuit court found in favor of the defendant, and the trust company appealed.

*Blackwood & Williams,* for appellant.

The Little Rock bank was bound by the representations of Allis, its president. 4 Thomp. Corp. § 4627; 1 Morawetz, Corp. § 538; 137 U. S. 107; 39 Me. 317; 72 Me. 170; 7 Metc. 274; 104 U. S. 194; 110 U. S. 7; 62 Ark. 19, 20; 44 Hun, 136; 5 N. Y. 291, 293; 106 N. Y. 195, S. C. 12 N. E. 433; 6 Am. & Eng. Corp. Cas. 245, S. C. 46 N. J. Law, 237; 61 N. W. 904; 25 Am. St. Rep. 134, S. C. 86 Mich. 134; 4 Bosw. 630; 1 Head, 164; 54 Pa. St. 380; 71 N. W. 652; 17 S. W. 644, 646, S. C. 107 Mo. 133; 34 N. E. 201, S. C. 138 N. Y. 480; 87 N. Y. 628; 45 Fed. 671; 16 W. Va. 555; 30 Vt. 170; 76 Fed. 339; 26 Am. St. Rep. 352. S. C. 104 Mo. 531; 10 Wall. 604, 645; 1 Salk. 289; 5 Pet. 566; 1 Dan. Neg. Inst. 389; 4 Th. Corp. §§ 4930–4933; 62 Ark. 40; 1 Am. & Eng. Corp. Cas. 235; 83 Fed. 556; 58 N. W. 943. The presumption is in favor of the authority of the president to make the contract. 73 Fed. 50; 12 Wheat. 70; 8 *id.* 356–7; 101 U. S. 181–3; 104 U. S. 192–5; 61 Fed. 804; 116 N. Y. 193; 143 N. Y. 430, 436; 37 S. W. 339; 34 Pa. St. 148; 4 Thompson, Corp. §§ 4789, 4781, 4815, 4741; Morawetz, Corp. §§ 336, 538, 593. An action for deceit will lie for fraudulent misrepresentations of the credit of a third person. 3 Term R. 51; 6 Johns. 181. Corporations are liable therefor to the same extent as are persons. 64 Ark. 613; 34 N. Y. 30; 42 Ark. 542. Corporations are liable in actions for deceit, where that deceit was committed by its agent in the performance of acts within the scope of his employment and for their benefit. 4 Am. & Eng. Enc. Law, 255; 5 H. L. C. 72; 106 Pa. St. 125; 77 N. C. 233; 37 N. J. Eq. 175; Benj. Sales, § 466; L. R. 8 Q. B. 244. 54 Ga. 635; 40 N. Y. 454; 2 Beach, Priv. Corp. § 448; 80 N. Y. 167; 2 Exch. 259; L. R. 5 P. C. 394; 10 Ch. D. 514;5 App. Cas. 317, 326; Poll. Torts, *82; 3 App. Cas. 106. The bank, by receiving the benefits of Allis' deceit, estopped itself to allege his want of authority. 2 Hill. Torts, 434; 4 Inst. 317; 9 Johns. 118; 14 Johns. 247; 8 Barb. 357; Ames, Corp. 311; 83 Fed. 565; 1 Laws, Rights, Remedies & Pr. §§ 29, 1041; Evans, Ag. 49; 30 N. Y 211; 51 Md. 290; 43 Conn. 434; 79 Fed. 296; 64 *ib.* 985; 1 Pars. Cont. 47n.; 2 Am.

Dec. 285; Story, Ag. §§ 455, 242, 244; Year Book, 7 Henry 4, p. 35; 1 Am. & Eng. Enc. Law, 437; 7 N. E. 85; Mech. Ag: § 113; Cooley, Torts, § 146; 4 Am. & Eng. Enc. Law, 252; 64 Ark. 208. Allis' knowledge of the deceit was the knowledge of the bank. Mech. Ag. § 72; 11 Wall. 356; 38 Vt. 402; 33 Vt. 252; 52 Mo. 181; 70 Mo. 290; 13 N. H. 145; 40 N. H. 375; 58 Vt. 113; 29 Minn. 322; 14 R. I. 293; 68 N. Y. 434; 10 N. Y. 178; 66 Ill. 438; 29 Ind. 553; 27 Ala. 336: 32 Ill. 517; 10 Rich. (S. C.) 293; 9 Heisk. 479; 72 Me. 226; 7 Biss. 260; 17 C. B. (N. S.) 466; 6 Ch. App. 678; 12 Cal. 377; 31 Cal. 160; 34 Ga. 304; 33 Ind. 147; 14 La. Ann. 711; 4 Humph. 396; 39 Mich. 362; 43 Vt. 403; 56 *id.* 77; 113 Mass. 391; 53 Wis. 361; 36 Minn. 112; 35 Barb. 330; 2 Hill, 451; 4 Pa. 127; 29 N. Y. Supp. 77; 82 Fed. 277. Estoppel applies as well to corporations as to individuals. 10 Wall. 604; 73 Fed. 951; 56 Fed. 967; 147 Mass. 268, S. C. 17 N. E. 496; 4 Thompson, Corp. § 4608, 5210, 5224; 50 N. H. 571; 57 Fed. 821; 58 Ark. 71; 9 Heisk. 437. There was no usury in the contract as to interest. An accidental over-charge does not constitute usury. 62 Ark. 380; 25 Ark. 260. Where an instrument is susceptible of two constructions, the one rendering it lawful and the other unlawful, the former construction should be adopted. 13 Ark. 363; 54 *ib.* 471; 46 *ib.* 129; 35 Ark. 55. The transaction was not a loan, but a sale of the notes for a discount, and hence not usurious. 1 Cranch, C. C. 556; 1 Barb. 462; 1 Bouv. Dict. "*Discount;*" 79 Fed. 296, 299. The burden was on appellee to show usury, and he has failed, since he has shown no corrupt agreement and no illegal charges. 59 Ark. 368; 25 *ib.* 191; 47 N. J. Eq. 8; 103 Ill. 362; 8 Atl. 555; 85 Ala. 394. The presumption is against usury, and it must be clearly proved. 81 N. Y. 363; 8 *ib.* 276; 40 *ib.* 248; 96 *ib.* 100; 25 N. J. Eq. 422; 47 N. J. Eq. 8. The laws of Arkansas govern as to usury. The contract was not usurious thereunder. 33 Ark. 648; 39 Am. Dec. 205; 55 *ib.* 387; 94 *ib.* 546; 31 *ib.* 264; 27 Am. & Eng. Enc. Law, 972. Allis' proposition was, presumably, that the notes be discounted at a legal rate, and the appellant had no power to bind him by an acceptance on

any other terms.    23 N. J. Eq. 512; 103 Mass. 356; 2 Sandf. 133; 14 Pet. 77; 103 U. S. 155; 4 Wheat. 225; 1 Pars. Cont. *477, *478; Poll. Cont. (4th Ed.) *2; Bish. Cont. § 313; 4 Minor's Inst. (2d Ed.) 17; 132 Mass. 129; 25 Ark. 545; 101 N. Y. 45; 94 U. S. 47; 34 N. H. 303; 35 Me. 388; 26 Ark. 382; 41 Wis. 504; 34 N. H. 304; Benj. Sales (4th Ed.) § 87. The proposition must be clear and definite, or its acceptance will not close a contract.    1 M. & S. 290; 2 B. & Ad. 232, S. C. 22 Eng. C. Law, 63; L. R. 20 Eq. 492, S. C. 44 L. J. Ch. 492; 59 Wis. 316; 8 Allen, 566; 4 Whart. 369; 142 Mass. 442. The law of the place where an offer is accepted by mail or telegram governs the contract.    4 Cliff. 598, S. C. 21 Fed. Cas. (No. 12, 715); 4 Ga. 1; 40 N. J. Law, 476; 15 R. I. 380, S. C. 2 Am. St. Rep, 902; 20 Q. B. Div. 640; 1 C. P. Div. 87; 2 Kent's Comm. 477; 6 Wend. 103; 32 Md. 196; 48 N. H. 14; 47 Ark. 525; 1 B. & Ald. 681; 1 H.L. Cas. 381; 23 Wall. 85; 61 Ark. 1; 60 Fed. 693.    *Lex loci contractus* governs as to validity and interpretation of contract.    7 Ark. 231; 20 *ib.* 356; 25 *ib.* 261; 40 *ib.* 423.

*Hill & Auten*, for appellee.

Allis did not represent the bank, so as to bind it.    Nor was there ever any ratification of his acts.    Mechem, Ag. §§ 129, 132.    Appellants should have tendered back the notes. 17 N. H. 573; 43 Am. Dec. 614; 4 Mass. 502, S. C. 3 Am. Dec. 230; 105 Mass. 558; 15 Mass. 319; 98 Mass. 205; 104 Mass. 494; 8 Am. Dec. 104–5; 1 Den. 69.    The bank is not estopped to dispute Allis' authority.    10 Wall. 604; 73 Fed. 951; 56 Fed. 967; 75 Fed. 769.    The transaction was usurious. For New York statutes put in evidence on the question of usury, see Tit. 3, Rev. St. (N. Y.) §§ 1, 2 and 5.    That the contract was usurious, see 41 Ark. 331; 7 Cow. 678; 4 Scam. 29; 1 Porter, 96.    Payment and receipt of excessive interest is *prima facie* evidence of usury.    10 Johns. 140; 2 Cow. 712; 8 Cow. 398; 3 Cow. 284.

*Blackwood & Williams*, for appellants, in reply.

Whether considered as an Arkansas or a New York contract, the transaction was not usurious.    The law of New

York forbidding corporations to plead usury applies to a foreign corporation maker of a usurious note, *executed and payable in New York,* and sued on in another state.   51 N. J. L. 186; 12 Wall. 226; 25 Gratt. 1.   The transaction was a *purchase* of the paper.   2 Pars. Cont. *421, *424; 1 J. J. Marsh. 497; Clarke, Cont. 309; Dan. Neg. Int. § 768; 8 Wheat. 338; 8 Pa. 548; 7 Wend. 569; 7 Pet. 107; 8 Cow. 685; 65 N. Y. 522; Hill & Den. 252; 91 N. Y. 327; 29 Hun, 129; 130 N. Y. 6; 72 Hun, 373; 90 N. Y. 303; 2 Conn. 175; 15 Me. 163; 16 Me. 456; 9 Barb. 647; 14 Ill. App. 566; 7 Pet. *424; 8 Cow. 685, 689; 19 Wis. (N. Y.) 433; 10 N. Y. 200; 9 Barb. 647; 79 Fed. 298; 35 Pa. St. 230; 15 Leg. Int. 132.   Also compare: 82 N. Y. 302; Boone, Bnkg. § 28; 18 Barb. 456; 26 Oh. St. 141; 20 Kas. 440; 74 N. Y. 329; 14 Ill. App. 556; 68 N. Y. 396.

*Hill & Auten,* for appellee, in reply:

That the bank can plead usury, notwithstanding the statute of New York, see 1 Otto, 29 (91 U. S.); S. C. Bk. 23 L. C. P. Ed. p. 196.

RIDDICK, J., (after stating the facts.)   This is an action by the Binghampton Trust Company against the First National Bank of Little Rock to recover damages for deceit.

The company does not ask for a rescission of its contract with the president of the bank by which it became the owner of the note of McCarthy-Joyce Company.   It asks for damages for deceit and fraud practiced upon it by which it was induced to pay out a large sum of money for the worthless note of an insolvent company.   A party who is induced to purchase property by deceit and fraud has an election of remedies.   He may rescind the contract, and to do this he must return or offer to return what he has received under it.   On the other hand, he may affirm the contract, and sue for damages occasioned by the deceit and fraud, and in that event he is not required to return or offer to return what he has received under the contract. These rules are well settled, and the contention of the bank that plaintiff should have returned or offered to return the notes must be overruled.   *Goodwin* v. *Robinson,* 30 Ark. 535; *Mat-*

*lock* v. *Reppy*, 47 Ark. 148; 14 Am. & Eng. Enc. Law (2d Ed.) 168, and cases cited.

The next contention is that Allis was not acting for the bank, but for the McCarthy-Joyce Company, and that he had no authority to bind the bank by his false representation. Allis was president of the bank to which the McCarthy-Joyce Company was indebted in a large amount. This company was financially embarrassed, and in fact insolvent. As president of the bank, Allis was endeavoring to collect this debt. For this purpose these notes were executed and delivered to him, and for this purpose he negotiated them to the trust company. His letter to the trust company by which he effected the sale of the notes is written on paper upon which is the bank's letter head. He assumes in the letter to be acting for the bank, and directs the company to remit the proceeds to "our credit" (meaning the bank), and signs the letter, "H. G. Allis, President." As president of the bank, it was his duty to endeavor to collect the debt which McCarthy-Joyce Company owed it. While he may have been trying to befriend the McCarthy-Joyce Company as well as to protect the bank, the evidence leaves no doubt in our minds that in this matter he was acting for the bank, and endeavoring to protect its interests. It is a matter of no moment that the directors of the bank did not know or authorize the false representations of Allis. We must, to quote the language of Mr. Benjamin, "distinguish between authority to commit a fraudulent act and authority to transact the business in the course of which the fraudulent act was committed." The bank, of course, did not authorize Allis to commit a fraud, "but it entrusted him with the conduct of this class of business, and he conducted it unfairly, and committed the fraud in the course of his employment." Benjamin, Q. C., in *Mackay* v. *Commercial Bank*, Law Rep. 5 P. C. 402. If a conductor having charge of a railway train in the course of his business commits an assault upon a passenger, the company may be liable for the damages, though it neither authorized or desired its agent to commit such an assault; for the principal is liable for the wrong of the agent committed in the course of his duties as agent. On the

same principle, a bank is liable for the fraud of its agent committed in the course of the bank's business. This rule is often applied, and hardly needs citation of cases to support it. In this case, as before stated, the fraud was committed by Allis as a means of collecting a debt due the bank from another party. It was done in the interest of the bank, and the bank received the money obtained by his fraud. Under these circumstances, the bank cannot at the same time retain the benefit and avoid the liability. That the bank is liable for the damages occasioned by this fraud of its agent, at least to the extent of the benefit received by it from the fraud, follows from settled rules of law, as well as from the plainest principles of justice. *Mackay* v. *Commercial Bank*, Law Rep. 5 P. C. 394; *Barwick* v. *English Joint Stock Bank*, Law Rep. 2 Exch. 259; *Swire* v. *Francis*, Law Rep. 3 App. Cases, 106; *Fishkill Savings Inst.* v. *National Bank*, 80 N. Y. 162. The question of the authority of the company to discount notes is also involved in this case, but we have already determined that the bank had such authority, in another case between the same parties, and refer to our opinion in that case for our reasons for this conclusion. *Binghampton Trust Co.* v. *Auten, ante,* p. 294.

The only remaining question arises on the contention by the bank that the discount of the notes by the trust company at the rate of seven per cent. per annum was, under the laws of New York, illegal and usurious. Now, conceding that this was a loan, and not a mere purchase of the note, the trust company could, under the New York statute of 1892, charge six per cent. interest and reasonable collection charges. In the absence of any proof as to what the collection charges were, we are not sure that we could hold the seven per cent. to be usurious under New York law, and it certainly would not be under the law of this state. But we need not discuss that question further; for, in order to show usury in this transaction, the defendant corporation relies upon a law of New York, but under another statute of that state a corporation cannot interpose the defense of usury. The statute, as construed by the courts of that state, operates to make lawful the contract of a corporation for the loan of money to itself which would

otherwise be usurious and void.    *Rosa* v. *Butterfield*, 33 N. Y. 665; *Lane* v. *Watson*, 51 N. J. L. 188; `Junction Railroad Co.` v *Bank of Ashland*, 12 Wall. (U. S.) 226. This statute applies to all corporations borrowing money in New York, and we know of no reason why it should not apply to a national bank. If there is any class of corporations which should not be permitted to plead usury, certainly banks should not be allowed to do so. All parties to this contract were corporations, and the contract was valid under the law of New York; and, if valid in the state where made, it is valid everywhere. If it was an Arkansas contract, it was valid, because it is not unlawful to charge seven per cent. in this state. So there is no usury, whether it is a New York or an Arkansas contract.

The note which the trust company was led to purchase through the fraud of the bank's president was shown to be worthless, and we think the trust company has made out a clear case to recover damages to the amount it paid to the bank on the note purchased. The judgment of the circuit court will be reversed, and a judgment entered here for that amount in favor of the trust company, with interest from date of payment.

BATTLE, J., did not participate.