BARNETT v. BANK OF PANGBURN.

Opinion delivered February 21, 1921.

1. BANKS AND BANKING—AUTHORITY OF PRESIDENT TO RECEIVE PAYMENT.—Where a debtor owing notes to a bank delivered to the president notes which were accepted as payment of his notes, the bank was bound by the act of its president in receiving such payment, though he converted the payment to his own use.

2. BILLS AND NOTES—BURDEN OF PROVING PAYMENT.—One asserting payment of notes has the burden of proving payment by a preponderance of the evidence.

Appeal from Cleburne Chancery Court; L. F. Reeder, Chancellor; reversed.

STATEMENT OF FACTS.

E. B. Crump brought this suit in equity against T. N. Barnett, Harry Churchill and the Bank of Pangburn to recover damages for a breach of warranty and for the cancellation of two notes given by him for the purchase price of the lands described in his complaint.

The Bank of Pangburn answered, claiming that it was the owner of the notes mentioned, and averred that it had a lien on the lands described in the complaint for the payment of said notes.

T. N. Barnett filed a separate answer in which he set up that the two notes referred to had been paid by him and asked that the lien of the bank be satisfied and his title to the lands be quieted against it.

The bank filed a reply, denying that the two notes in controversy had been paid, and asked judgment for the amount of same, and for a lien on the land to secure the payment thereof.

On November 27, 1917, Harry Churchill conveyed by warranty deed to T. N. Barnett 257 acres of land in Cleburne County, Arkansas, for the consideration of $5,000. The sum of $1,000 was paid in cash and the balance in notes as follows: Two notes for $1,250 each, due twelve and eighteen months after date and two notes for $750 each, due twenty-four and thirty months after date. These notes were transferred by Churchill for value received before maturity to the Pangburn State Bank. On

the 12th day of October, 1918, T. N. Barnett conveyed eighty acres of these lands to E. B. Crump for the consideration of $3,000. One thousand and eight hundred dollars were paid in cash and the balance by two notes for $600 each, due one and two years after date. T. N. Barnett was represented by W. A. Barnett, his brother, and Harry Churchill. The cash and notes paid by Crump, after deducting the commissions due Churchill and W. A. Barnett, were delivered to the Pangburn State Bank to be applied to the notes owed by T. N. Barnett. On March 1, 1920, T. N. Barnett sold forty acres of the land conveyed to him by Churchill to A. F. Williams for the consideration of $1,500. He took in payment three land notes executed by Y. D. Whitehurst to A. F. Williams for $187.50 and the note of A. F. Williams to himself for $937.50.

Harry Churchill was the president of the Pangburn State Bank and also the local representative of the Western Tie & Timber Company. Subsequently the Pangburn State Bank became insolvent, and its property was taken over by the Bank of Pangburn and its liabilities were assumed by that bank. The Western Tie & Timber Company is one of the principal stockholders of the Bank of Pangburn. Churchill transferred the notes given by A. F. Williams for the purchase price of the forty acres of land to the Western Tie & Timber Company, and that company now claims the notes.

The record shows that all the notes originally given to T. N. Barnett for the purchase price of the land have been paid except the two notes for $750 each, held and claimed by the Bank of Pangburn. At the time Crump purchased the eighty acres of land, the cashier of Pangburn State Bank assured him that the lien of the bank for the unpaid purchase money would be released, and Crump relied upon his statement in making the purchase. At the time these representations were made by the cashier, he had in his possession for the bank one of the $750 notes, and soon thereafter the bank became the holder of the other.

Other facts will be stated or referred to in the opinion.

The chancellor was of the opinion that the lien of the bank for the unpaid purchase money of the land should be released on account of the representations made by its cashier. He was also of the opinion that the Bank of Pangburn should recover from the plaintiff, E. B. Crump, the sum of $1,200 which was declared to be a lien upon the land purchased by him, and the chancellor further was of the opinion that the Bank of Pangburn should have judgment against T. N. Barnett for the amount due on the two notes for $750 each, and that this amount should constitute a lien upon the land of the original purchase now owned by T. N. Barnett. A decree was entered in accordance with the finding of the chancellor. Crump has satisfied the decree in so far as it affects him, and T. N. Barnett alone has appealed to this court.

The appellant, *pro se.*

1. Whether or not the Bank of Pangburn holds the two notes as owner or liquidating agent, it came into possession of them at a receiver's sale, and it has no better title than the insolvent State Bank of Pangburn had at the time it closed its doors. 98 Ark. 200; 97 *Id.* 534; 98 *Id.* 370; 115 *Id.* 235; 128 *Id.* 449; 131 *Id.* 140. The bank was not an innocent purchaser, but took subject to all the equities between the original parties. 99 Ark. 458; 115 *Id.* 44.

2. The two notes were paid by appellant, as the evidence shows. The burden is upon the holder of an altered negotiable note to show that the alteration was made with the maker's consent. 27 Ark. 108. The presumption is that the alteration was made by the one having the custody. 5 Ark. 347; 50 *Id.* 358. The testimony showed that appellant instructed Churchill to make the sale to Williams in order to pay the $750 notes, and that the cashier of the Pangburn State Bank told that the notes had been paid. The testimony is conclusive, and

the findings of the court should not be based upon inference or conjecture. 116 Ark. 82; 114 *Id.* 112; 117 *Id.* 638; 113 *Id.* 353. The record shows conclusively that appellant paid the two notes, and the chancellor was in error in finding against appellant.

*Hammock & Bittle,* for appellee.

The only question is whether or not the two $750 lien notes, executed by appellant to Harry Churchill, have been paid. The chancellor found they had been paid, and his finding is not against the preponderance of the testimony.

HART, J. (after stating the facts). The issue raised by the appeal has been narrowed down to the question of whether or not the two notes for $750 each have been paid. Barnett assumes the affirmative of this issue and the Bank of Pangburn the negative. One of the $750 notes was delivered to the Pangburn State Bank, and the other $750 note was transferred to it by Churchill, the president of the bank, as collateral security. Both notes were held by the Pangburn State Bank and were turned over to the Bank of Pangburn when it was organized and had taken over the assets and assumed the liabilities of the Pangburn State Bank.

It is the contention of T. N. Barnett that these two notes were paid when he sold forty acres of the land originally purchased to A. F. Williams and took three land notes given to Williams for $187.50 each and the individual note of Williams for $937.50. On the other hand, it is contended by counsel for the bank that Churchill took these notes and endorsed them to the Western Tie & Timber Company on his own account and that the two $750 notes are due and unpaid.

It will be remembered that Churchill was the president of the Pangburn State Bank and was also the local representative of the Western Tie & Timber Company, and that his office was in the bank building. It is true that he acted as the agent for T. N. Barnett in making the sale of the forty acres of land to A. F. Williams; but

he also acted for the bank in accepting the notes given for the purchase price of the land by Williams if in fact he did accept them in payment of the two $750 notes. As president of the bank, it was his duty to collect the debt which T. N. Barnett owed it; and if the notes were turned over to him by T. N. Barnett in payment of the two $750 notes, the bank was bound by his action in receiving the notes in payment of the notes of Barnett held by it, although Churchill may have afterward converted the notes received in payment to his own use. *Binghampton Trust Co.* v. *Auten,* 68 Ark. 299.

On this point Barnett testified that Churchill agreed with him to apply the notes given by Williams in payment of the two $750 notes held by the bank and which were a lien on the land originally purchased by Barnett, and which are still owned by him. Indeed, Barnett said that he sold the forty acres of land to Williams for the very purpose of settling with the bank for these two $750 notes. He said that Churchill told him that the bank had the notes and would deliver them to him in a few days; but that the notes were never in fact delivered to him by the bank. Barnett is corroborated by the testimony of his brother who negotiated the sale for him.

Again, A. F. Williams who purchased the forty acres of land testified that at the time he purchased the land the cashier of the bank told him that the title was good and that there was nothing against it. Williams did not know at the time that the bank held the two $750 notes.

This testimony, if true, shows that the bank agreed to accept the notes given by Williams for the purchase price of the lands in payment of the two $750 notes. The testimony tending to contradict this is that the two $750 notes were not surrendered at the time the transaction was had. Barnett said, however, that the president and cashier told him that the bank had the notes and would surrender them at a more convenient time in the near future. His testimony in this respect is not disputed.

The cashier of the Bank of Pangburn does testify that T. N. Barnett promised to pay the two $750 notes after that bank took over the assets of the defunct Pang-

burn State Bank. His testimony, however, is not suffi-
cient to overcome the affirmative testimony to the effect
that such payment was agreed upon between the parties
at the time Barnett sold the lands to Williams. Barnett
states positively that he sold the lands to Williams for
the purpose of paying these two notes. There is cer-
tainly nothing in the record tending to show that he
delivered the notes given to him by Williams to Church-
ill for the purpose of accommodating the latter and al-
lowing him to transfer them to the Western Tie & Tim-
ber Company for his own debt. Barnett did not owe
that company anything, but did owe the Pangburn State
Bank the two $750 notes. As above stated, the president
of that bank had the authority, and it was his duty, to col-
lect from Barnett the debt owed by him to the bank.

The testimony shows that the notes for the purchase
price of the forty acres of land given by Williams to
Barnett were turned over by Barnett to Churchill for
the payment of the two $750 notes. The burden was on
Barnett to establish payment by a preponderance of the
evidence, and we think he has done so. The chancellor
erred in holding to the contrary.

It follows that the decree must be reversed, and the
cause will be remanded for further proceedings in ac-
cordance with this opinion.