**PHŒNIX REFINING CO. v. KILGORE NAT. BANK et al.**

No. 2028.

Court of Civil Appeals of Texas. Waco.

Nov. 3, 1938.

Rehearing Denied Dec. 1, 1938.

Read, Forsythe & Kepke, of Dallas, and Russell & Beaucaire, of San Antonio, for appellant.

McNees & Roberts, of Dallas, Geo. McGee, of Kilgore, Touchstone, Wight, Gormley & Price and John L. Lancaster, all of Dallas, and Andrews, Kelly, Kurth & Campbell, of Houston, for appellees.

ALEXANDER, Justice.

In December 1932, H. I. McGrew contracted with Phœnix Refining Company for the sale of ten cars of crude oil. Shortly thereafter, one Jim Brock applied to the agent of the International-Great Northern Railroad Company at Kilgore for a bill of lading for nine cars of crude oil to be shipped to Phœnix Refining Company at Dallas. Said agent at first refused to issue bill of lading because he did not know Brock, but later, on the latter's being identified, the bill of lading was issued as requested. Said bill of lading is designated as "Uniform Straight Bill of Lading. Original—Not Negotiable," and was for the shipment of nine tank cars of crude oil "loaded shell full," the numbers and initials of the cars being given. It was marked "SLC," which is interpreted "shipper's load and count." Shortly after the issuance of the bill of lading, McGrew presented same with draft

on Phœnix Refining Company for the sale price of the oil to Kilgore National Bank, and said bank, after communicating with Phœnix Refining Company, paid the amount of the draft to McGrew. The railroad company shipped the cars to Longview and attempted to deliver the same to its connecting carrier, when it was discovered for the first time that the cars were empty. It was later learned that said cars had no oil in them at the time the bill of lading was issued. The Kilgore National Bank brought this suit against Phœnix Refining Company to recover the amount of the draft paid by it, and Phœnix Refining Company sued the International-Great Northern Railroad Company and its trustees for damages for carelessly issuing the bill of lading without actually receiving the oil. A trial before a jury resulted in judgment for the bank against the Phœnix Refining Company for the amount sued for, but the refining company failed to recover from the railroad company and its trustees. The refining company appealed.

When the bill of lading and draft were presented to the bank for payment, the bank telephoned the refining company with reference to whether it would authorize payment of the draft. In the lower court the bank contended that the refining company unconditionally authorized the payment of the draft, whereas, the refining company alleged that it authorized the bank to pay the draft only in the event "said nine cars filled with oil had been delivered to the railway company for shipment to Phœnix Refining Company, Dallas, Texas * * *." The jury, in answer to special issues Nos. 1 and 2, found that the refining company authorized the bank to pay the draft and agreed to pay the bank the amount thereof upon presentation of same by the bank. Special issue No. 3 was as follows: "Do you find from a preponderance of the evidence that such payment of draft would be made only in the event nine cars filled with oil had been delivered to the railroad company for shipment to the Phœnix Refining Company at Dallas, Texas?" to which the jury answered "No." The appellant here complains because the court refused to submit to the jury its special requested issue No. 1 as follows: "Do you find and believe from a preponderance of the evidence that Kilgore National Bank and the Phœnix Refining Company in making the agreement referred to in special issue No. 1

contemplated that Phœnix Refining Company would not be obligated to pay H. I. McGrew's draft in the event no oil had been actually delivered to the railroad company for shipment to Phœnix Refining Company?" We do not think there was any error in refusing the requested issue. By special issue No. 3 the court presented the refining company's defense in substantially the same language as alleged by it. Ordinarily, the submission of an issue substantially in the form in which it has been pleaded is sufficient. 41 Tex.Jur. 1098, 1127; Tilley v. Kangerga, Tex.Civ.App., 83 S.W.2d 787, par. 9, writ refused.

By several propositions appellant presents the contention that the railroad company was negligent in issuing the bill of lading without having actually received the oil for transportation, or at least the evidence raised a question of fact thereon, which it was entitled to have submitted to the jury; that appellant had a right to and did rely on the truth of the matters stated in the bill of lading and was injured thereby, and that the railroad company is now estopped to deny that it actually received the nine cars of oil as recited in the bill of lading issued by it.

Whether or not a railway company is liable to an innocent purchaser upon a bill of lading issued by its agent when no goods were received for transportation is a question on which there is a difference of opinion among the courts of the different states. 10 C.J. 196, sec. 255. We believe, however, that the weight of authority is that the carrier is not liable under such circumstances. 10 C.J. 197, sec. 256; 9 Amer.Jur. 677, par. 420; 7 Tex.Jur. 14. At one time the majority rule was based, in part, on the holding that an agent of a carrier is authorized to issue bills of lading only upon receipt of goods for transportation, and if he issues such bill of lading without receiving any goods, he exceeds his authority and the doctrine of respondeat superior does not apply. Friedlander v. Texas & P. Ry. Co., 130 U.S. 416, 9 S.Ct. 570, 32 L.Ed. 991. This doctrine of limited agency, however, was overruled in Gleason v. Seaboard Air Line Ry. Co., 278 U.S. 349, 49 S.Ct. 161, 73 L.Ed. 415. The better reason now given in support of the rule is that bills of lading do not stand as representative of so much money, as do promissory notes and bills of exchange which authorize good faith holders thereof to demand

payment in money of the full amount therein stipulated, but such bills of lading stand merely as symbols or representatives of the goods for which they were issued, and as chattels are not negotiable in the true sense, that quality cannot be given to the symbols; and while the transfer of a bill of lading may in some instances be sufficient to transfer the title of the holder thereof to the property which it represents, its negotiation ordinarily carries with it only such rights as the assignor had thereunder and no more. 7 Tex.Jur. 9; Shaw v. North Pennsylvania Railway Co., 101 U.S. 557, 25 L.Ed. 892; Pollard v. Vinton, 105 U.S. 7, 26 L.Ed. 998; Gulf, C. & S. F. Ry. Co. v. Kempner, Tex.Com. App., 282 S.W. 795, 797, par. 4, and authorities there cited; Landa v. Lattin, 19 Tex.Civ.App. 246, 46 S.W. 48; National Bank of Cleburne v. Citizens' National Bank, 41 Tex.Civ.App. 535, 93 S.W. 209; Adoue v. Seeligson, 54 Tex. 593, 595. While in the case of Gulf, C. & S. F. Ry. Co. v. Kempner, supra, the court had before it a case in which the carrier had received some goods but had issued a bill of lading for more than it had received, we think the rule is the same where the carrier issues a bill of lading without having received any goods at all. In the case just referred to, the court said [page 797]: "It results, of course, that a bill of lading (with the possible exception of one which has been 'validated,' 'authenticated,' or 'certified') is not, in a broad or true sense, a negotiable instrument. * * * With the exception noted, the assignee is presumed to have acquired the lading with knowledge that the goods actually shipped may not conform to the exact description given in the instrument, and that the transportation contract and duties will have been performed if the goods actually received be transported and delivered (or tendered) 'in like order and condition.' Ex necessitate, he is chargeable with notice of the shipper's positive wrong in procuring a bill of lading which falsely describes the goods." In the case at bar, Brock, to whom the bill of lading was issued, delivered to the railroad company no oil and was not in position to demand of the railroad company the return of any oil to him. He could confer on his assigns no greater right than he possessed, and hence the refining company, as his remote assignee under the bill of lading, could not hold the railroad company liable for its failure to deliver any oil to it. The refining company is presumed to have acquired the bill of lading with notice of the limitation of the authority of its assignor and is in no position to assert estoppel against the railroad company merely because it issued to Brock a bill of lading for goods which it had not received.

We have considered all other assignments of error and find no reversible error.

The judgment of the trial court is affirmed.