PHOENIX REFINING COMPANY V. KILGORE NATIONAL BANK ET AL.

No. 7523. Decided October 30, 1940.
Rehearing overruled November 27, 1940.
(143 S. W., 2d Series, 925.)

*Forsythe & Kepke,* of Dallas, *Truehart, McMillan & Russell,* of San Antonio, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the railroad company was not negligent in issuing a bill of lading without first ascertaining whether or not any crude oil, called for by its bill of lading, was actually received by it. Chicago & N. W. Ry. Co. v. Stephens Natl. Bank, 75 Fed. (2d) 398; Wichita Falls Compress Co. v. W. L. Moody & Co., 154 S. W. 1032; Hutchison on Carriers, par. 161.

Where a railroad company has issued its bill of lading certifying that it has received nine tank cars "loaded shell full of crude oil" consigned to a named refining company, and where said consignee, in reliance upon the bill of lading agrees to and does pay a draft to which said bill of lading is attached without any notice or knowledge that no oil had been received by the railroad company, the railroad company is estopped to deny, after the consignee had so acted, that it had received the oil as recited in its bill of lading, and it was therefore liable for the amount of the draft. Westbrook v. Guderian, 22 S. W. 59; Wilson v. Jones, 45 S. W. (2d) 572; Johnson v. Neeley, 36 S. W. (2d) 799.

*McNees & McNees, McNees & Roberts,* and *Touchstone, Wight, Gormley & Price,* all of Dallas, *George I. McGee,* of Kilgore, and *Andrews, Kelley, Kurth & Campbell,* of Houston, for defendants in error.

When a bill of lading shows on its face that the loading was by the shipper and that the bill was issued upon affidavit

furnished, and when the receipt of the goods or title thereto is specially denied, the burden is upon the consignee to prove the receipt of the goods by the carrier. Texarkana & Ft. S. Ry. Co. v. Brass, 260 S. W. 828; Morris v. Davis, 3 S. W. (2d) 109.

A draft drawn upon a refining company by its agent for the purchase of crude oil and paid by the bank, after communication with the refining company, who authorized payment, is equivalent to a draft drawn by the refining company on itself, and constitutes its primary obligation, for which it alone is responsible. Woldert Co. v. Citizens Bank of Ft. Valley, Ga., 234 S. W. 124; Julian Petroleum Corp. v. Egger, 15 S. W. (2d) 36.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

The following general statement of the nature and result of this suit is taken from the opinion of the Court of Civil Appeals:

"In December 1932, H. I. McGrew contracted with Phoenix Refining Company for the sale of ten cars of crude oil. Shortly thereafter, one Jim Brock applied to the agent of the International-Great Northern Railroad Company at Kilgore for a bill of lading for nine cars of crude oil to be shipped to Phoenix Refining Company at Dallas. Said agent at first refused to issue bill of lading because he did not know Brock, but later, on the latter's being identified, the bill of lading was issued as requested. Said bill of lading is designated as 'Uniform Straight Bill of Lading. Original—Not Negotiable,' and was for the shipment of nine tank cars of crude oil 'loaded shell full,' the numbers and initials of the cars being given. It was marked 'SLC,' which is interpreted 'shipper's load and count.' Shortly after the issuance of the bill of lading, McGrew presented same with draft on Phoenix Refining Company for the sale price of the oil to Kilgore National Bank, and said bank, after communicating with Phoenix Refining Company, paid the amount of the draft to McGrew. The railroad company shipped the cars to Longview and attempted to deliver the same to its connecting carrier, when it was discovered for the first time that the cars were empty. It was later learned that said cars had no oil in them at the time the bill of lading was issued. The Kilgore National Bank brought this suit against Phoenix Refining Company to recover the amount of the draft paid by it, and Phoenix Refining Company sued the International-Great Northern Railroad Company and its trustees for damages for carelessly issuing the bill of lading without actually receiving the oil. A

trial before a jury resulted in judgment for the bank against the Phoenix Refining Company for the amount sued for, but the refining company failed to recover from the railroad company and its trustees."

Judgment of the trial court was affirmed by the Court of Civil Appeals. 121 S. W. (2d) 636.

While in petition for writ of error plaintiff. in error presents certain assignments as to the judgment of the bank against it, yet most of the assignments relate to the action of the trial court (affirmed by the Court of Civil Appeals) in failing to allow a recovery over against the railway company and its trustees. The Court of Civil Appeals has undoubtedly correctly disposed of all questions as regards the judgment in favor of the bank, and further discussion of such assignments is unnecessary. The writ of error was granted upon the construction of a statute which it was alleged materially affected the decision with reference to liability against the railway company.

It will be observed that as to the liability of the railway company the Court of Civil Appeals based its holding primarily upon the proposition that ordinarily a railway company is not liable to an innocent purchaser of a bill of lading issued by an agent when no goods are received for transportation. Liability of a railway company upon a bill of lading issued by its agent when no goods are actually received for transportation was formerly denied as to even an innocent purchaser upon the ground that the agent was without authority to issue bills of lading when no goods were actually received for shipment. The case of Friedlander v. Texas & P. Ry. Co., 130 U. S. 416, 32 Law Ed. 991, was regarded as the foundation of such holding, and it was followed by many State courts, including our own. In the recent case of Gleason v. Seaboard Air Line Ry. Co., 278 U. S. 349, 73 Law Ed. 415, it was held that as to interstate shipments this rule, as regards agency, has been modified by section 22 of the Federal Bills of Lading Act, which section is printed at the bottom of page 355 of 278 U. S. Reports. It will be noted, however, that this rule is modified only as regards (a) "the owner of goods covered by a straight bill of lading," and (b) as to "the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods." In this regard, therefore, the decision is of no value to plaintiff in error, as there never was any "owner" of the goods (there being no goods in existence), and it was not the holder of an "order" bill of lading and did

not rely upon the recitals of the bill of lading in question, as will hereinafter be shown. As we understand the Gleason case, it did not overrule the prior holdings, except to the extent that same had been modified by section 22 of the Bills of Lading Act.

■ We are inclined to agree with counsel for plaintiff in error that Article 894 of the Revised Statute of 1925 has abolished the rule of non-liability in this State so far as it was based on authority of the agent. However, it has not extended liability in any other respect. The article mentioned is as follows:

"Each bill of lading issued by the authorized agent of any carrier or receiver thereof, affected by this law, shall be held to be the act and deed of such carrier or receiver thereof, and the principal shall be liable thereon *in accordance with the terms thereof.* When any such bill of lading shall be validated, authenticated or certified in accordance with the rules and regulations herein provided for, and as the Railroad Commission may prescribe in accordance with the provisions of this law, and in the hands of an innocent holder for value, it shall be incontestable as to the matters and things therein set forth." (Emphasis ours.)

This article explicitly provides the conditions under which an innocent holder for value of a bill of lading is protected. As the law makes provision for a bill of lading to be "validated, authenticated or certified," it necessarily by implication permits the issuance of a bill of lading, such as was issued in this instance. Gulf C. & S. F. Ry. Co. v. Kempner (Com. App.) 282 S. W. 795.

It will be noted, however, that the Court of Civil Appeals based its holding upon the more modern rule, which is expressed by that court in this language: "Such bills of lading stand merely as symbols or reresentatives of the goods for which they were issued, and as chattels are not negotiable in the true sense, that quality cannot be given to the symbols; and while the transfer of a bill of lading may in some instances be sufficient to transfer the title of the holder thereof to the property which it represents, its negotiations ordinarily carries with it only such rights as the assignor had thereunder and no more." It is appropriate to note here that the bill of lading issued in this instance was expressly stated to be "nonnegotiable." Counsel for plaintiff in error has cited no statute which would change this rule so far as the present case is concerned.

However, this holding of the Court of Civil Appeals does not exactly dispose of the real contention which plaintiff in error insists is the true basis of its suit, towit, negligence of the railway company in issuing the bill of lading which resulted in injury to plaintiff in error.

Counsel rely strongly on the case of Gleason v. Seaboard Air Line Railway Company, supra, in this regard. In the Gleason case the Supreme Court of the United States expressly overruled certain language in the case of Friedlander v. Ry. Co., supra, in so far as it tended to deny liability to Gleason upon the grounds of negligence. It will be noted, however, that in the Gleason case the cause of action which was upheld was "a cause of action in deceit by McDonnell, acting as agent of respondent, in giving the petitioner the false notice, and set up that the petitioner was induced to pay the draft by the representation that the cotton had arrived." Such a contention was distinctly different from the alleged negligence in the present case.

■ In view of the annotations appearing upon the face of the bill of lading (it not being an "order" bill, nor validated, authenticated or verified), we are not prepared to say that the railway company made deceitful representations upon which plaintiff in error had a right to rely. Assuming, however, that the company was guilty of negligence in issuing the bill of lading under the circumstances, and assuming further that the pleadings of plaintiff in error are sufficient upon which to base an action on such negligence (which is extremely doubtful), it nevertheless is undisputably shown by the evidence that plaintiff in error in no respect relied upon the bill of lading, and such alleged negligence was not the cause of injury to it.

The record discloses that the bank recovered of plaintiff in error solely upon its guarantee or promise to pay the draft drawn by McGrew. It did not rely upon the bill of lading in any respect. It did not pay the draft in reliance on anything disclosed by the bill of lading, but solely upon the independent agreement of plaintiff in error that it would protect the bank in such payment. In addition, plaintiff in error never relied upon the bill of lading in any respect. It never accepted same, but refused to pay the draft when presented. Mr. Wallace, who represented the company in the whole matter, expressly stated that he relied upon the bank to satisfy itself that the oil had been loaded into the car. The testimony warrants the inference that the bill of lading was never mentioned in the conversation over the telephone between the vice-president of the bank and

Mr. Wallace. The vice-president of the bank expressly stated that he would not have paid the draft and taken up the bill of lading except for the assurance of plaintiff in error that it would guarantee its payment. The jury accepted this version of the evidence. The evidence plainly discloses that plaintiff in error was the victim of the fraud of McGrew, and its confidence in him was the sole cause of its injury, and the issuing of the bill of lading had nothing whatever to do with its loss.

For the reasons stated herein the judgments of the trial court and of the Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court October 30, 1940.

Rehearing overruled November 27, 1940.