**UNITED STATES of America,**
**Plaintiff,**

v.

**FOX LAKE STATE BANK and Donald**
**Adams, Defendants.**

**No. 61 C 1498.**

United States District Court
N. D. Illinois, E. D.

April 16, 1965.

See also D.C., 225 F.Supp. 723.

1) Are the knowledge and acts of an agent imputable to his principal, when the agent's interests are adverse to those of his principal?

2) Did the actions of defendant Fox Lake State Bank, pursuant to Sec. 201.5 (b) of the FHA Regulations, save the eligibility of the instant notes for insurance?

3) Does the False Claims Act require proof of "intent to defraud" as an element of recovery under Sec. 231, Title 31 U.S.C.?

4) What effect should be given defendant's communications with the FHA?

These questions each demand an answer favorable to the government.

1) It is uncontroverted that the Fox Lake Bank presented claims for payment which certified that the regulations had been complied with. It would seem equally clear from the evidence that such certification was untrue. Whatever the actual knowledge of the bank itself, the evidence demonstrates that an employee and agent of Fox Lake, Donald Adams, was placed in charge of making FHA Title I Loans, and that said Donald Adams approved loans, from the proceeds of which he received $200, knowing (1) that some of the proceeds of said loans were returned to the borrower for purposes other than home improvements, and (2) that the credit applications were false.

Basic agency principles require that a principal be charged with constructive knowledge of all material facts of which its agent receives notice while acting within the scope of his authority. The principal must further be held accountable for the activities of that agent. The theory behind such a principle is sound, for when it is the principal itself which clothes the agent with the authority to conduct such activities, and by such actions places the agent in such a position that others will rely on that apparent authority, such principal must bear the loss occasioned by its failure to more discreetly dispense authority.

Edward Hanrahan, U. S. Atty., Thomas James, Asst. U. S. Atty., for plaintiff.

Roscoe Nash, Chapman & Cutler, Chicago, Ill., for defendant.

MAROVITZ, District Judge.

Upon consideration of the trial transcript, all briefs filed herein and oral argument, we see the opinion that four thresh-old legal issues remain to be addressed:

There would appear to be four thresh-old legal issues to be addressed:

As stated by Mr. Justice Stone in Gleason v. Seaboard Air Line Ry. Co., 278 U.S. 349, 356, 357, 49 S.Ct. 161, 162, 163, 73 L.Ed. 415 (1929):

"  *   *   *  few doctrines of the law are more firmly established or more in harmony with accepted notions of social policy than that of the liability of the principal without fault of his own."

"Granted the validity and general application of the rule itself, there would seem to be no more reason for creating an exception to it because of the agent's secret purpose to benefit himself by his breach of duty than in any other case where his default is activated by negligence or sinister motives. In either case, the injury to him who deals with the agent, his relationship and that of the principal to the agent's wrongful act, and the economic consequence of it to the principal in the conduct of whose business the wrong was committed, are the same."

Similarly, it has been stated generally by Circuit Judge Learned Hand in Ricketts v. Pennsylvania R. Co. (2d Cir., 1946), 153 F.2d 757, 164 A.L.R. 387:

"  *   *   *  it is now settled both in the federal system (citing Gleason, supra) and in England (citations) that an agent does not cease to be acting within the scope of his authority when he is engaged in a fraud on a third person."

"We can see no distinction in principle between that situation and one in which the agent deceives, not the third person, but his principal. The reason in each case for holding the principal is that the third person has no means of knowing that the agent is acting beyond his authority, and it is a matter of entire indifference whether the agent adds deception of his principal to deception of the third person."

See also Standard Surety & Casualty Co. of New York v. Plantsville Natl. Bank (2d Cir., 1946), 158 F.2d 422; New York Cent. & H. R. R. Co. v. United States, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613 (1909); United States v. Armour & Co. (3rd Cir., 1948), 168 F.2d 342; Oddo v. Interstate Bakeries, Inc. (8th Cir., 1959), 271 F.2d 417.

■■ Following this long line of decisions, it would seem proper to conclude that the fraudulent acts of an agent clothed with authority by a principal are imputable to said principal despite his alleged lack of consent.

2) Section 201.5(b) of the FHA Regulations reads in pertinent part:

"If after the loan is made, an insured who acted in good faith discovers any material misstatements or misuse of the proceeds of the loan by the borrower, dealer, or others, the eligibility of the note for insurance will not be affected. However, the insured shall promptly report such discovery to the Commissioner."

A logical analysis of this Regulation leads to construction thereof in favor of the plaintiff. Assuming as we have, that for purposes of assigning liability for a false claim, the principal must be considered as one with the wrongdoing agent, it would not be reasonable to apply the above regulation, which by its very language speaks of a lender "who acted in good faith."

■ The regulation speaks of misuse of the loan by "the borrower, dealer or others." If we were to construe "others" as defendant desires, to include bank officers and employees, the regulation would have the illogical effect of permitting a banking corporation to disclaim the acts of its fraudulent employee, while at the same time permitting the bank to retain the fruits of that employee's transaction, by saving the eligibility of the loan.

■ The purpose of the regulation could not logically be to save the eligibility of a loan which the bank itself, (under law) acting through its agent, made in bad faith for a fraudulent purpose. That is, the regulation at issue

was intended to save the bank from liability occasioned through no fraud of its own, as where a borrower has made misstatements in an application. Such complete absence of fault is not present here where the bank clothed its agent with the authority to accomplish these fraudulent deeds.

The "promptness" of notification raised by defendant involves a factual dispute with regard to when the bank ceased merely "suspecting" fraud, and actually "discovered" it. This is a matter of credibility of witnesses, which, under the above legal determination, does not have to be considered.

3) There has been no further argument of substantial merit advanced as to the alleged requirement of the False Claims Act to prove "intent to defraud." In the motion for summary judgment D.C., 225 F.Supp. 723 (1963), this Court clearly decided that issue. There would seem to be present no reasons to alter that determination. It might only be noted that since that opinion was handed down, the 10th Circuit Court of Appeals has stated in Fleming v. United States (10th Cir., 1964), 336 F.2d 475, at p. 479 (dicta):

> "Had Congress intended to incorporate * * * intent to defraud into each portion of the (False Claims) Act, it is unlikely that it would have done so expressly in two portions and not in the remaining portions."

4) Defendants contend further that having been advised by one Mr. Mowatt of the FHA to file the instant claims, they cannot now be found guilty of violating the False Claims Act. The facts developed by evidence at trial demonstrate that Mr. Mowatt informed the officers of Fox Lake that he would be unable to render an opinion on the eligibility of the loans for insurance until claims thereon had been formally filed. He therefore suggested that if Fox Lake sought to determine the eligibility of said claims they must file them in accordance with standard procedure. Such instructions cannot by themselves free defendants here of liability. Certainly any such filing must be free of fraudulent statements. It must be assumed that there are limits, both moral and legal, to what defendants here could in good faith present for a ruling. When the knowledge of Donald Adams is imputed to the bank, that "good faith" requirement becomes somewhat narrowed.

By way of analogy the Court might consider a situation in which it is approached by a would-be plaintiff who inquires whether a complaint he was about to file might subject him to a subsequent suit for malicious prosecution. The Court would be bound to reply that it was unable to give a legal opinion on such matter until there was an actual case or controversy pending. That is, we would advise, as Mr. Mowatt did here, that no determination could be made until a suit was actually filed. Such advice could not prevent the Court from finding at a later date that the plaintiff had exceeded the applicable legal standards and indeed was guilty of malicious prosecution.

Similarly, Fox Lake may not now be heard to say that the FHA is barred from claiming fraud, because it required filing before determining eligibility. There are, and there should be, limits on what a bank may reasonably present for insurance coverage.

Accordingly, having found for the plaintiff, we shall adopt the proposed findings of fact and conclusions of law submitted in this matter by the government.