604 F.2d 540
 CA 79-3210 NATIONAL ACCEPTANCE COMPANY OF AMERICA,
Plaintiff-Appellee, Cross-Appellant,
v.
COAL PRODUCERS ASSOCIATION, INC., a Kentucky Corporation,
and Carlton Kinchen, Defendants-Appellants, Cross-Appellees.
 Nos. 78-2410, 78-2411.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 1, 1979.
Decided Aug. 24, 1979.
Rehearing Denied Sept. 25, 1979.
 
 James C. Murray, Jr., and Steven M. Rasher, Chicago, Ill., for plaintiff-appellee, cross appellant.
 Michael P. Myers, Chicago, Ill., for defendants-appellants, cross appellees.
 Before CUMMINGS, BAUER and WOOD, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 This case is before the Court on an appeal by Coal Producers Association, Inc., and a cross-appeal by National Acceptance Company of America. Coal Producers and its president Carlton Kinchen appeal from an order of the district court denying leave to file a counterclaim. NAC cross-appeals from the district court's judgment order of October 3, 1978, in favor of Coal Producers and Kinchen on NAC's complaint. We affirm the judgment in favor of Coal Producers and Kinchen, and reverse the order denying leave to file a counterclaim.
 
 
 2
 * In reviewing the judgments below, we must begin by briefly sketching the relevant facts. Carlton Kinchen is the president of Coal Producers Association, Inc., a Kentucky corporation engaged in the business of strip-mining coal. In July, 1975, Kinchen contacted James A. Shackelford to inquire about the purchase of some heavy machinery. Shackelford agreed to sell Coal Producers two Caterpillar D8H Dozers and to make the necessary financing arrangements.
 
 
 3
 Later that same month, Coal Producers received a package of loan documents from Shackelford that had been prepared by NAC. The documents included: 1) a Promissory Note; 2) a Loan and Equipment Security Agreement; 3) a Corporation Solvency Affidavit; 4) a Secretary's Certificate as to Officers and Directors and Director's Resolutions; and 5) a Certificate of Completion and Delivery.
 
 
 4
 After reviewing the documents, Coal Producers sent a letter to NAC in which it offered to borrow the sum of $145,000. With the letter, Coal Producers enclosed all of the loan documents except the Certificate of Completion and Delivery. On July 24, 1975, NAC notified Coal Producers that it had accepted the latter's offer to borrow and had disbursed $145,000 to Shackelford Machinery & Equipment, Inc.
 
 
 5
 In August 1975, Coal Producers agreed to purchase a Hough Front End Loader from Shackelford. To finance the purchase, Coal Producers forwarded to NAC an offer to borrow an additional $50,000, and again enclosed all of the executed documents except the Certificate of Completion and Delivery. NAC again disbursed the proceeds of the loan to Shackelford after receiving Coal Producers' offer.
 
 
 6
 With the arrival of the Caterpillar Dozers and the Front End Loader, Coal Producers inspected the machinery and found some serious mechanical problems. Accordingly, it complained to NAC officer Jerome Gorchow when he called about delinquent payments on the loans. Gorchow assured Coal Producers that NAC would make Shackelford put the machinery in good working condition, and asked for an initial "good faith" payment on the notes. In October, November, and December of 1975, Coal Producers had further conversations with Gorchow, in which he again promised that Shackelford would repair the equipment. During these months, Coal Producers made some initial payments on the loans.
 
 
 7
 In February 1976, Kinchen wrote a letter to NAC stating that further payments would not be made on the loans until the machinery was repaired. Once the loans were in default, NAC repossessed the two Dozers and the Front End Loader. After selling the equipment and crediting Coal Producers' account with the purchase price, NAC brought this action to recover the balance of the loans.
 
 II
 
 8
 In holding that NAC breached its contract with Coal Producers by disbursing the loan proceeds without prior authorization, the district court found that the Completion and Delivery Certificate was part of the loan agreement between the parties. The Certificate provided:"The undersigned hereby acknowledges receipt of the equipment hereinafter described which is covered by our Exhibit 'A' dated July 21, 1975 to our Security Agreement with your company dated July 21, 1975. Said equipment is satisfactory in every way and has been accepted by us.
 
 DESCRIPTION OF EQUIPMENT
 
 9
 Two (2) Caterpillar Model D8H Crawler Tractors, Serial # 's 46A24881 and 46A21159.
 
 
 10
 You are hereby authorized to disburse from the proceeds of our loan secured by the above described equipment the sum of $145,000 to Shackelford Machinery & Equipment, Inc., Route 1, U.S. 84 East, Thomasville, Georgia in full payment for the sale to us of such equipment."
 
 
 11
 The Certificate was part of a group of documents that had been prepared by NAC attorneys and forwarded to Coal Producers by Shackelford.
 
 
 12
 On appeal, NAC argues that because Coal Producers' subsequent offer to borrow made no reference to the Completion and Delivery Certificate, the terms of the Certificate did not become part of the loan contract. It is our view, however, that both parties reasonably regarded the Certificate as an integral part of the agreement. Since the document was drafted by NAC attorneys, it is quite clear that NAC did not view the Certificate as irrelevant or purposeless. Accordingly, Coal Producers could reasonably assume that the Certificate was designed to play an important role in the loan agreement specifically, to notify the lender that the borrower has received, and is satisfied with the collateral, and to direct the lender to disburse the proceeds to the seller. This is particularly true since NAC's counsel attached to the Certificate a handwritten note which read: "Mail to us when Eq. rec'd., Approved & accepted." In this light, we are not persuaded that the district court erred in holding that the Certificate was part of the loan agreement, and that NAC breached the agreement by disbursing the loan proceeds without prior authorization.
 
 
 13
 NAC next argues that Coal Producers ratified the unauthorized disbursement by making payments on the notes after it had become aware of the disbursement. Prior to making the payments, however, Coal Producers received NAC's promise that it would make Shackelford put the machinery in good operating condition. In effect, then, NAC assured Coal Producers that it would rectify the very condition that would have dissuaded Coal Producers from making the payments. In light of the equitable considerations arising from these facts, we decline to view the payments as a course of conduct evidencing an intent to ratify the unauthorized disbursement. We therefore affirm the district court's judgment on NAC's claim against Coal Producers.
 
 III
 
 14
 A second major issue in this appeal concerns Coal Producer's counterclaim against NAC. The district court denied Coal Producers' motion for leave to file the counterclaim on the grounds that it failed to state a claim of common law fraud against NAC.
 
 
 15
 In essence, Coal Producers' amended counterclaim alleged that: 1) Shackelford paid two officers of NAC Bathalter and Gorchow certain "kickbacks" to induce them to advance funds to purchasers of Shackelford's equipment; 2) Bathalter and Gorchow caused NAC to submit financing documents to Coal Producers in furtherance of this illegal course of dealing; 3) Bathalter and Gorchow falsely represented that NAC was acting as a bona fide independent lender by submitting the documents to Coal Producers; 4) Coal Producers relied on this misrepresentation in executing the documents; and 5) Bathalter and Gorchow processed and approved the loans without appraising the fair market value of the equipment.
 
 
 16
 It seems clear that these allegations would state a claim of common law fraud against NAC if the conduct of Gorchow and Bathalter can be imputed to NAC. On this point, Section 261 of the Restatement of the Law of Agency, Second (1958), provides:
 
 
 17
 "A person who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit fraud upon third persons is subject to liability to such third persons for the fraud."
 
 
 18
 See also, Carroll v. First National Bank of Lincolnwood, 413 F.2d 353, 358 (7th Cir. 1969); United States v. Fox Lake State Bank, 240 F.Supp. 720, 722 (N.D.Ill.1965). Under this principle, the allegations of Coal Producers' counterclaim are sufficient to state a claim of common law fraud against NAC. Accordingly, we must conclude that the district court erred in denying the motion for leave to file the counterclaim.
 
 
 19
 We have examined the other arguments advanced by NAC and find them without merit. The judgment of the district court is therefore
 
 
 20
 AFFIRMED IN PART AND REVERSED IN PART.