**Edward STEINBERG and Beverly Steinberg, Plaintiffs,**

v.

**Stu MIKKELSEN and Association Life Insurance Company, Inc., n/k/a TMG Life Insurance Company, Inc., Defendants.**

Civ.A. No. 93–C–963.

United States District Court, E.D. Wisconsin.

Oct. 13, 1995.

Scott D. Metz of Krause, Metz & Snyder, Appleton, WI, for plaintiffs.

Susan Tyndall of Hinshaw & Culbertson, Milwaukee, WI, for Def. Assoc. Life.

John D. Claypool of Herrling, Clark, Hartzheim & Siddall, Appleton, WI, for Def. Mikkelsen.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### BACKGROUND

On August 4, 1993, Edward and Beverly Steinberg filed this suit in Outagamie County Circuit Court against Association Life Insurance Company, Inc., now called TMG Life Insurance Company ("TMG"). The suit alleged that TMG wrongfully denied them benefits and that their insurance agent, Stu Mikkelsen, was negligent, reckless, and strictly liable for knowingly failing to disclose Mrs. Steinberg's past health problems in procuring the policy. The alleged failure to disclose resulted in uninsured medical expenses. On September 3, 1993, the defendants removed the case to federal court. Plaintiffs' motion to remand was denied on November 30, 1993. They amended their complaint on December 13, 1993, to bring the action under the provisions of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

The defendant, TMG, filed a motion for summary judgment on June 7, 1994. Plaintiffs filed their response on July 5, 1994, arguing, among other things, that the court should adopt a federal common law of agency imputing the knowledge of an agent to its principal. On June 22, 1995, a magistrate judge in this district recommended that this court grant defendant's motion for summary judgment. The judge based his conclusion on the fact that the Steinbergs' application contained misrepresentations about Mrs. Steinberg's medical insurance history. The Steinbergs contend that they signed a blank application for health insurance benefits with TMG and that Mikkelsen negligently failed to include this information on the application. The judge concluded that Mikkelsen was not an agent of TMG, and therefore, Mikkelsen's knowledge could not be imputed to TMG.

He did not reach the issue of whether the court should adopt a federal common law of agency imputing an agent's knowledge to its principal.

On August 2, 1995, plaintiffs filed an objection to the judge's recommendation for dismissal of the claim against TMG. This court accepted the objection as timely. Plaintiffs objected to 1) one of the proposed findings of fact; and 2) the conclusion that Mikkelsen was not an agent of TMG. The defendant TMG filed a response to the objection on August 14, 1995. For purposes of this motion, defendant TMG agreed that Mikkelsen had knowledge of Mrs. Steinberg's medical history. Plaintiffs filed a reply to defendant's response on August 17, 1995.

Currently pending before this court is the magistrate judge's recommendation to grant summary judgment in favor of defendant TMG. Jurisdiction is proper pursuant to proper pursuant to 28 U.S.C. § 1331.

### FACTS

1. The Steinbergs owned a business named Valley Commercial Appliance Repair, Inc. (hereinafter "Valley Repair") which had a total of four employees, including Mr. Steinberg.

2. Valley Repair selected the health insurance coverage for its employees and paid 100% of the premiums for its employees and their dependents.

3. Edward and Beverly Steinberg decided to apply for group health insurance for themselves and their employees in the summer of 1987.

4. Stu Mikkelsen assisted Valley Repair in the application process. Mikkelsen first submitted an application to Employers Health Insurance Company (hereinafter "Employers Insurance").

5. Mrs. Steinberg's health history includes a massive stroke in 1970, high blood pressure, a thyroid problem, convulsions, neck strain and painful breasts.

6. Mrs. Steinberg's medical conditions required her to take a number of prescription medication in the summer of 1987, including blood pressure and thyroid medication, Dilantin and a water pill.

7. Mr. Steinberg's health history includes an enlarged prostate, which caused him to be "rated" for insurance purposes, and kidney stones.

8. The Steinbergs submitted an insurance application to Employers Insurance that did not indicate any of Mr. or Mrs. Steinberg's health problems.

9. Employers Insurance rejected the Steinbergs' and Valley Repair's application for group health insurance because of Mrs. Steinberg's poor health history. Mikkelsen was sent a copy of the rejection letter.

10. Mikkelsen entered into an "Independent Agent New Group Business Checklist" agreement with TMG. The agreement required Mikkelsen to comply with TMG rules and regulations.

11. Valley Repair and the Steinbergs then applied for group insurance from Association Life Insurance Company (hereinafter "TMG") by way of an application dated August 11, 1987. The application consisted of two portions, one to be filled out by the employer and one, inquiring about health history, to be filled out by the employee. Stu Mikkelsen also assisted in preparation of the TMG application, including both the employee and employer portions.

12. The TMG application did not disclose the Steinbergs; health histories, with the exception of Mrs. Steinberg's "muscle strain in neck," which was described as "No problems now. Ok Good Health." The TMG application also did not disclose Employers Insurance's rejection of their June 29, 1987 application for insurance.

13. TMG issued group health insurance to Valley Repair, providing health insurance to its employees and their dependents, including the Steinbergs.

14. Mikkelsen was compensated by TMG for procuring the insurance policy.

15. TMG relied upon the representations in the application respecting the employees and their dependents' health histories in deciding whether to issue coverage. Had the application questions concerning Mrs. Stein-

berg's health history and/or prior rejections of coverage been answered correctly, TMG would not have issued coverage to Valley Repair.

16. Following issuance of the TMG coverage, Mrs. Steinberg had an episode of chest pain. Surgery was performed on her to remove blockages which caused the chest pain.

17. Following submission of Mrs. Steinberg's medical bills for payment TMG requested additional medical information from the Steinbergs and their physicians. The parties dispute as to what information was sought and provided.

18. TMG rejected the Steinbergs' claim for health insurance benefits on the basis that their application for insurance failed to disclose Mrs. Steinberg's prior health problems. According to TMG, had this information been disclosed, it would not have issued coverage to Valley Repair.

19. Review of the Steinbergs' application for insurance revealed that Mrs. Steinberg's previous health history had not been disclosed on the application.

20. In a form filed concurrently with the Steinbergs' application, Stu Mikkelsen certified that the Steinbergs had not disclosed any adverse health history to him during the application process that was not reflected on the application.

## STANDARD OF REVIEW

■ The district court reviews *de novo* a magistrate's recommendations on dispositive motions. 28 U.S.C. § 636(b)(1)(B), (C); Fed. R.Civ.P. 72(b). The *de novo* review shall apply to those issues to which timely objection is made. *Id.* Thus, this court must review the judge's recommendation on the issue of Mikkelsen's agency. The court has applied *de novo* review to the findings of fact.

## SUMMARY JUDGMENT STANDARD

■ The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The

party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). To withstand summary judgment, however, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Even if some facts are in dispute, entry of summary judgment is in order if the movant either establishes uncontroverted facts entitling it to summary judgment or demonstrates that the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court must draw all reasonable inferences from the record in favor of the nonmoving party. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.,* 40 F.3d 146, 150 (7th Cir.1994).

## ANALYSIS

Plaintiffs, in opposing defendant's summary judgment motion, argue that Mikkelsen is an agent of TMG, and that the court should adopt a federal common law of agency imputing his knowledge to TMG. Defendant's argue that Mikkelsen is not their agent. Thus, the court has two issues before it: 1) whether to allow the use of the federal common law of agency imputing the knowledge of an agent to its principal in ERISA cases, and 2) whether Mikkelsen was an agent for TMG. The issues are intertwined, a negative answer on either issue makes the other issue moot. This court adopts the federal common law of agency imputing the knowledge of an agent to its principal. The court also finds that a reasonable jury could find that Mikkelsen was an agent of TMG. For the above reasons, the court denies defendant's motion for summary judgment.

## I. AGENCY

■ A reasonable jury, applying the federal common law of agency, could find that Mikkelsen was an agent of TMG. This court believes that the magistrate was incorrect in relying on Illinois law to conclude Mikkelsen

was not an agent of TMG. *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 264–65 (7th Cir.1986). Although the adoption of state law as federal common law may be appropriate, *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir.1993), it can yield inconsistency when dealing with federal statutes. *Mississippi Choctaw Indians v. Holyfield,* 490 U.S. 30, 43, 109 S.Ct. 1597, 1605, 104 L.Ed.2d 29 (1989). The *Mississippi Band* Court noted that reliance on the common law rather than the law of a particular state reflects the fact that "federal statutes are generally intended to have uniform nationwide application." 490 U.S. at 43, 109 S.Ct. at 1605. Application of state agency law in ERISA cases will result in a lack of uniformity. For example, given the facts, Mikkelsen might not be TMG's agent in Illinois under *Lazzara,* but in other states, those same facts would make him an agent of TMG. *See* MN St. § 60k.15; NH St. § 405:43; Ohio R.C. § 3929.27 (all defining whether one is an agent of an insurer). Thus, the court must determine whether Mikkelsen meets the federal common law definition of "agent."

■ The Restatement (Second) of Agency is the appropriate place to find the federal common law definition. Courts adopting a federal common law of agency generally follow the Restatement. *See e.g., Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 740, 109 S.Ct. 2166, 2173, 104 L.Ed.2d 811 (1989); *Taylor v. Peoples Natural Gas Co.,* 49 F.3d 982 (3rd Cir.1995) (applying the Restatement to determine the federal common law of apparent authority in an ERISA action). The restatement provides that:

> Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

Restatement (Second) Agency § 1(1). Under the Restatement, agency is a legal determination requiring the existence of certain factual elements. *Id.* cmt. b. Thus, a mixed question of law and fact. The factual elements of agency are: 1) a manifestation of consent by the principal that the agent will act for it; 2) a consent to act by the agent; and 3) subjection to the control of the principal. *Id.*

■ The written agreement between the parties entitled, "Independent Agent New Group Business Checklist" requires Mikkelsen to comply with several TMG Life (then Association Life) rules. (Judith Langer, Aff. Ex. D.) These rules include checking eligibility guidelines in an "Agent Sales Guide" and complying with the company's rules and regulations. Mikkelsen signed the agreement. In addition, he was compensated by TMG. Viewing the facts in a light most favorable to the nonmoving party, a reasonable jury could conclude that both TMG and Mikkelsen manifested consent that Mikkelsen would act for TMG, and that Mikkelsen would be subject to its control. Thus, Mikkelsen could be found to be an agent of TMG.

Next, the court must determine whether it is appropriate for the court to use the federal common law of agency imputing the knowledge of an agent to its principal.[1]

## II. FEDERAL COMMON LAW OF ERISA

■ In this case, it is appropriate to use the law of agency imputing an agent's knowledge to its principal. Courts are to develop a federal common law of ERISA. In *Thomason,* the Seventh Circuit Court recognized that Congress expected that a federal common law of ERISA would develop. 9 F.3d at 647 (7th Cir.1993), *citing Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987). Courts may develop federal common law only where ERISA does not expressly address the issue before the court. *Id.* Where the statute is silent, the court must construct a common law which effectuates the policies underlying ERISA. *Black v. TIC Investment Corp.,* 900

---

1. A person has notice of a fact if his agent has knowledge of the fact, reason to know it or should know it, has been given a notification of it, under circumstances coming within the rules applying to the liability of a principal because of notice to his agent.

Restatement (Second) of Agency § 9(3). "[T]he liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give the principal information." *Id.* at § 272.

F.2d 112, 114 (7th Cir.1990). ERISA is silent as to agency issues.[2] Thus, the court must determine whether the adoption of a federal common law imputing knowledge of an agent to its principal effectuates ERISA policy.

### A. ERISA Policy

■ Adopting a federal common law of agency imputing the knowledge of an agent to its principal is consistent with ERISA policy. The purpose of ERISA is to "promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). On its face, the adoption of agency imputation law is clearly consistent with the promotion of the interests of Mrs. Steinberg. She is a beneficiary seeking coverage from an employee benefit plan. Furthermore, many courts have applied the federal common law of agency in ERISA cases. *See Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982 (3rd Cir.1995) (adopting federal common law of apparent authority); *National Football Scouting v. Continental Assurance Co.*, 931 F.2d 646, 648 (10th Cir.1991) (adopting federal common law of agency); *Penn v. Howe–Baker Engineers, Inc.*, 898 F.2d 1096, 1101–02 (5th Cir.1990) (applying federal common law of agency in determining definition of employee). None of these courts found that the adoption of agency principles would contravene the policies of ERISA. Although, none of them addressed the specific issue of imputing the knowledge of an agent, the core principle of agency doctrine is the same—the liability of the principal through the actions or omissions of its agent. In this case, it is alleged that the Steinbergs fully disclosed their medical history to Mikkelsen. They thought they were covered for their medical expenses and acted accordingly. Arguably, they would have kept their old insurance if they had not been able to receive coverage through TMG. Allowing the insureds to use the agency concept of imputation would "promote" their interests as beneficiaries.

In addition, agency laws apply to most legal actions. Although the Seventh Circuit has not reached the issue of using agency in ERISA actions, the reasoning in *Black v. TIC Investment* (adopting estoppel in some ERISA cases) is instructive. *Black*—in its initial analysis—noted that to deny the use of estoppel is an exception to the general rule that estoppel principles apply to all legal actions. 900 F.2d at 115. *Id.* The court allowed the use of estoppel principles because the principles created no danger to the ERISA plan, and the court could find no good reason not to apply estoppel. *Id.* Similarly, in this case, agency laws are generally applicable to all legal actions. Agency doctrine has been a part of the federal common law for a long time. *See Gleason v. Seaboard Air Line Ry. Co.*, 278 U.S. 349, 354–58, 49 S.Ct. 161, 162–63, 73 L.Ed. 415 (1929). The Supreme Court in *Gleason* stated, "[F]ew doctrines of law are more firmly established or more in harmony with accepted notions of social policy than that of the liability of the principal without fault of his own." 278 U.S. at 356, 49 S.Ct. at 162–63. In light of the general application of agency laws to all legal action, the court should use agency law in ERISA cases, unless there is a good reason to the contrary.

■ There are no valid reasons not to allow the use of agency law. Several Seventh Circuit cases outlined several factors which determine whether the court should adopt a federal common law of ERISA. The determinative issues are: 1) whether the federal common law is consistent with the policies of ERISA; 2) whether adopting the federal common law will have an impact on the actuarial soundness of the plan; and 3) whether adopting the federal common law would be, in effect, fashioning a new ERISA remedy. *See Butler v. Encyclopedia, Inc.*, 41 F.3d 285 (7th Cir.1994) (refusing to adopt federal common law of substantial compliance because it would conflict directly with ERISA requirements); *Black*, 900 F.2d at 114–15 (in adopting estoppel principles only where actuarial soundness of plan is not threatened); *Buckley Dement, Inc. v. Travelers Plan Administrators of Illinois, Inc.*, 39 F.3d 784 (7th Cir.1994) (refusing to adopt federal common law because the court felt a

---

**2.** The term "agent" is mentioned in ERISA, but it is not defined. 29 U.S.C. § 1023.

remedy was being fashioned); *Pappas v. Buck Consultants, Inc.,* 923 F.2d 531 (7th Cir.1991) (refusing to adopt federal common law allowing claims against nonadministrator, nonfiduciaries because adoption would expand ERISA's scope and fashion an ERISA remedy).[3] Consistency with ERISA policy has been discussed herein. Thus, the court must discuss the potential impact of agency law on the health insurance plan's actuarial soundness and whether a remedy is being fashioned.

### B. Actuarial Soundness

Adopting a federal common law of agency imputing the knowledge of an agent to its principal will not effect the actuarial soundness of the insurance plan. There are two types of ERISA plans: pensions plans and employee welfare-benefit plans. The distinction is important. Pension plans are funded, have vesting requirements, and funding requirements. A fund is created. In contrast, welfare-benefit plans provide benefits for employees but no fund is created. Courts have distinguished between the two and held that instances that effect the liability of a health insurer will not contravene the actuarial soundness of ERISA plans where the plan in question is an unfunded, single-employer, welfare-benefit plan. *Black,* 900 F.2d at 114–15. In *Black,* the court noted that applying estoppel to ERISA claims raises concerns about the impact on the actuarial soundness of the plan, but held that this was not a concern in the case of an unfunded welfare plan. Because there was no fund to deplete, applying estoppel principles did not affect the actuarial soundness of the plan. The court held that common law estoppel principles are applicable in ERISA causes of action where the plan is a single-employer, unfunded, welfare-benefit plan. *Id.* As in *Black,* the TMG Life plan is a single-employer, unfunded, welfare-benefit plan. Adopting a federal common law imputing Mikkelsen's knowledge to TMG will not threaten the plan's actuarial soundness.

### C. Fashioning Remedies

Adopting this law will not fashion a new ERISA remedy. Courts look with disfavor on the fashioning of new remedies in ERISA actions. In *Pappas v. Buck Consultants, Inc.,* the court refused to adopt a federal common law cause of action against individuals who were not administrators of an ERISA plan. 923 F.2d 531 (7th Cir.1991). In so holding, the court noted a distinction between the power of the courts to create new remedies under ERISA and the power of the courts to create a substantive federal common law of contracts and trusts. The former is limited; the latter is broad. *Id.* at 541. The court reasoned that expanding causes of action to include nonadministrators would work to fashion a new remedy because ERISA does not contemplate remedies against nonadministrators. It only contemplates recoveries from administrators and employers. *Id.* In this case, adopting a federal common law imputing Mikkelsen's knowledge to TMG would not create a new ERISA remedy. It would simply work to allow the Steinbergs, as beneficiaries, to receive benefits from the plan; an insured seeking coverage from an insurer.

### CONCLUSION

For purposes of summary judgment, this court also holds that a reasonable jury could find that Mikkelsen was an agent for TMG life and thus his knowledge could be imputed to TMG. The court also holds that the common law principle of agency, imputing the knowledge of an agent to its principal, is applicable to ERISA claims involving unfunded, single-employer, welfare-benefit plans. For the above reasons, Defendant TMG Life Insurance Company's motion for summary judgment is **DENIED.**

---

**3.** The Seventh Circuit has also adopted federal common law causes of action under ERISA. *See Cannon v. Wittek Cos.,* 60 F.3d 1282 (1995) (adopting federal common law of contract interpretations); *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293 (1993) (adopting federal common law of estoppel where misrepresentation occurred); *UIU Severance Pay Trust Fund v. Local Union No. 18–U,* 998 F.2d 509, 513 (1993) (adopting federal common law of restitution); *Black,* 900 F.2d 112, 115 (1990) (adopting federal common law of equitable estoppel where actuarial soundness of plan not threatened).

The court maintains supplemental jurisdiction over the claims against Mikkelsen pursuant to 28 U.S.C. § 1367. Due to the age of this case, trial is set for Tuesday, January 2, 1996 at 10:00 a.m. The final pretrial conference is set for Tuesday, December 19, 1995 at 2:00 p.m.

**SO ORDERED.**